IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

GREAT SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA
2600 Virginia Avenue, N.W., Suite 705
Washington, DC 20037-1925

Plaintiff,

vs.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY
5000 Overlook Avenue, S.W.
Washington, DC 20032

Serve Service of Process Agent:

Linda Manley
Secretary to the Board of Directors
5000 Overlook Avenue, S.W.
Washington, DC 20032

Defendant.

Case Number: ___________

**COMPLAINT**

Plaintiff Great Socialist People's Libyan Arab Jamahiriya, by and through its attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, sues Defendant District of Columbia Water and Sewer Authority, and respectfully requests that this Honorable Court grant the relief requested in this Complaint, specifically enter an Order directing Defendant District of Columbia Water and Sewer Authority to release any liens for water and sewage service at property owned by Plaintiff Great Socialist People's Libyan Arab Jamahiriya at 2201 Wyoming Avenue, N.W., Washington, DC and direct resumption of water and sewage service at this address. In addition, the Plaintiff seeks One Million Dollars in compensatory damages

resulting from Defendant's failure to provide water and sewage service at the Wyoming Avenue property.

**Jurisdiction**

1. This Honorable Court has jurisdiction over the claims presented in the instant Complaint pursuant to 28 U.S.C. § 1330 as Plaintiff Great Socialist People's Libyan Arab Jamahiriya is a "foreign state."

**Venue**

2. Venue is proper in this Honorable Court pursuant to 28 U.S.C. §1391 as the property that is the subject of the instant action is located within the District of Columbia.

**Property at Issue**

3. This matter concerns improved real property located at 2201 Wyoming Avenue, N.W., Washington, DC that is owned by the Libyan Government and was previously used as the Libyan Ambassador's residence.

**Parties**

4. Plaintiff Great Socialist People's Libyan Arab Jamahiriya [hereinafter the "Libyan Government"] is a "foreign state" that operates in the United States of America through its Mission located in the Watergate complex in Washington, DC.

5. Defendant District of Columbia Water and Sewer Authority [hereinafter "WASA"] is a semi-autonomous regional entity controlled by a general manager who reports to an eleven member board of directors representing the District of Columbia, Prince George's County, Montgomery County and Fairfax County.[1]

6. Defendant WASA provides retail water and wastewater services to residential and commercial customers in the District of Columbia, among other services. Id.

---

[1] See http://www.dcwasa.com/about/gen_overview.cfm.

**Background of U.S./Libyan Relations**

7. In May 1981, the U.S. Government closed the Libyan Embassy and Chancery in Washington and expelled the staff in response to a general pattern of "unacceptable behavior."[2]

8. In 1986, following a terrorist bombing at a discothèque in West Berlin frequented by American military personnel, the U.S. Government retaliated against targets in Libya and imposed broad economic sanctions.[3]

9. On September 20, 2004, the U.S. Government lifted these economic sanctions after the Libyan Government accepted responsibility for the actions that gave rise to these sanctions, including the 1988 bombing of Pan Am Flight 103 over Lockerbie, Scotland. Id.

10. On May 15, 2006, U.S. Secretary of State Condoleezza Rice announced that the U.S. Government was "upgrading" diplomatic relations with the Libyan Government expects to reopen the U.S. Embassy in Tripoli in the very near future.[4]

11. Along with the reopening of the U.S. Embassy in Tripoli, the U.S. Government has invited the Libyan Government to reopen its Embassy in Washington. Id.

**Background of Libyan Government Interests in Washington during Sanction Period**

12. During the period the Libyan Embassy in Washington was closed, the Libyan Government was not able to conduct diplomatic affairs in the U.S. directly, but rather its interests were represented by the Embassy of the United Arab Emirates in Washington.

---

2 See http://www.state.gov/r/pa/prs/ps/2006/66243.htm.
3 See http://www.state.gov/r/pa/ei/bgn/5425.htm.
4 See http://www.state.gov/r/pa/prs/ps/2006/66243.htm.

13. Also, officials within the United Arab Emirates Embassy managed and maintained real property belonging to the Libyan Government within the United States during the sanction period.

14. One of the properties managed and maintained by the Embassy of the United Arab Emirates on behalf of the Libyan Government was the property at issue in this complaint - 2201 Wyoming Avenue, N.W., Washington, DC.

15. At some point during the sanction period, but believed to be prior to late-2001, the Wyoming Avenue property was occupied by "squatters" without the knowledge or consent of either the UAE or Libyan Governments.

16. These "squatters" unlawfully established an account with Defendant WASA for water and sewage services for their own benefit.

17. Rather than verifying the right of the squatters to occupy the Wyoming Avenue property, Defendant WASA simply commenced water and sewage service at the Wyoming Avenue property.

18. Defendant WASA then reactivated an account of a non-existent entity - "United Kingdom of Lybia [sic]" that ceased to exist once the Great Socialist People's Libyan Arab Jamahiriya was established.

19. Obviously, the Libyan Government derived no benefit from the squatters use of the water and sewage service at the Wyoming Avenue property, or, for that matter, the squatters use of the property itself.

20. The Embassy of the United Arab Emirates instituted litigation in the Landlord and Tenant Division of the District of Columbia Superior Court in order to evict the squatters.[5]

21. In March 2003, these squatters were evicted from the property after lengthy court proceedings.

22. In November 2003, the Embassy of the United Arab Emirates directed A & B Plumbing of Fort Washington, Maryland to disconnect water service at the Wyoming Avenue address since the property was unoccupied.

23. Pursuant to this request, A & B Plumbing disconnected the water service at the Wyoming Avenue address.

24. Subsequent to A & B Plumbing's disconnection of water service in November 2003, Defendant WASA continued to assess water charges as well as late charges against the Wyoming Avenue property.

25. In fact, Defendant WASA's bill to the "United Kingdom of Lybia [sic]" prior to the filing of the instant complaint shows a bill due in the amount of $16,925.91 for services allegedly rendered through December 8, 2003 that increased to $27,710.46 as of September 26, 2005.[6]

26. Interestingly, it appears from this bill that the squatters were paying their water and sewer bills on a somewhat regular basis since the bill provided to the "United Kingdom of Lybia [sic]" shows a "zero" balance on October 16, 2000.

---

[5] See Embassy of the United Arab Emirates v. Unknown Occupants of 2201 Wyoming Ave., NW, Case Number LT-50609-01, Judge Neal Kravitz.

[6] See "DCWASA PRODUCTION FILES E-CIS V7R3" Ledger Information Report for Account: "75294-9 UNITED KINGDOM OF LYBIA" that is attached to the instant complaint as Exhibit 1.

**Defendant WASA's Alleged Lien on Wyoming Avenue Property**

27. According to Defendant WASA, a lien for water and sewage services exists on the Wyoming Avenue property in excess of $27,710.46 as a result of the "squatters" use of Defendant WASA's water and sewage services.

28. With the expected reopening of the Libyan Embassy in Washington, the Libyan Government is currently in the process of renovating their Wyoming Avenue property for use as the Ambassador's residence.

29. Defendant WASA, however, is not allowing the Libyan Government to use Defendant WASA's water and sewage services until the alleged lien is fully paid.

**Count I – Breach of Contract**[7]

30. The allegations contained in Paragraphs 1-29 of the instant Complaint are incorporated herein as if fully stated.

31. Defendant WASA is the exclusive provider of water and sewage services at 2201 Wyoming Avenue, N.W., Washington, DC.

32. As a *de facto* monopoly, Defendant WASA has an implied contract with all property owners in the areas that it services to provide water and sewage service so long as the customer pays all proper charges for this service.

33. Defendant WASA breached this implied contract with the Libyan Government when it refused to turn on water and sewage service until the Libyan Government paid a bill in excess of $27,710.46 that Defendant WASA alleges is due and owing on the Wyoming Avenue property.

---

[7] In the District of Columbia, the relationship between a utility and its customer is contractual. Jackson v. Public Service Commission, 590 A.2d 517, 521 (D.C. 1991).

34. Since the Libyan Government does not owe Defendant WASA any "past due" balance on the Wyoming Avenue property, the Libyan Government demands that Defendant WASA provide water and sewage service at the Wyoming Avenue property.

35. As a direct and proximate result of Defendant WASA's breach of their implied contract to provide water and sewage service at the Wyoming Avenue property, the Libyan Government has suffered monetary damages, including, but not limited to, loss of use of the property and costs incurred due to construction and renovation delays resulting from the lack of water and sewage service at the property.

WHEREFORE, Plaintiff Great Socialist People's Libyan Arab Jamahiriya respectfully requests that this Honorable Court grant the relief requested in this Complaint, specifically enter an Order directing Defendant to release any liens for water and sewage service at 2201 Wyoming Avenue, N.W., Washington, DC and direct resumption of water and sewage service at this address as well as an Order directing Defendant District of Columbia Water and Sewer Authority to pay One Million Dollars as compensatory damages resulting from Defendant's failure to provide water and sewage service at the Wyoming Avenue property.

**Count II – Negligence**

36. The allegations contained in Paragraphs 1-29 of the instant Complaint are incorporated herein as if fully stated.

37. Defendant WASA owed the Libyan Government a duty to ensure that occupiers of the Wyoming Avenue property were authorized by the Libyan Government as the owner of the property prior to establishing or providing water and sewage service at that location.

38. Defendant WASA breached this duty when it established and provided water and sewage service to squatters whom the Libyan Government did not authorize to occupy the Wyoming Avenue property and charged the Libyan Government with the bill for the squatters' usage of Defendant WASA's water and sewage services.

39. As a direct and proximate result of Defendant WASA's breach of their implied contract to provide water and sewage service at the Wyoming Avenue property, the Libyan Government has suffered monetary damages, including, but not limited to, loss of use of the property and costs incurred due to construction and renovation delays resulting from the lack of water and sewage service at the property.

WHEREFORE, Plaintiff Great Socialist People's Libyan Arab Jamahiriya respectfully requests that this Honorable Court grant the relief requested in this Complaint, specifically enter an Order directing Defendant to release any liens for water and sewage service at 2201 Wyoming Avenue, N.W., Washington, DC and direct resumption of water and sewage service at this address as well as an Order directing Defendant District of Columbia Water and Sewer Authority to pay One Million Dollars as compensatory damages resulting from Defendant's failure to provide water and sewage service at the Wyoming Avenue property.

**Count III – Violation of the Diplomatic Relations Act, 22 U.S.C. § 254a and the Vienna Convention on Diplomatic Relations Act of April 18, 1961, 23 U.S.T. 3227)**

40. The allegations contained in Paragraphs 1-29 of the instant Complaint are incorporated herein as if fully stated.

41. The "Diplomatic Relations Act," 22 U.S.C. § 254a (3) and (4), provides

> As used in this Act,
>
> (3) the term "mission" includes missions within the meaning of the Vienna Convention and any missions representing foreign governments,

individually or collectively, which are extended the same privileges and immunities, pursuant to law, as are enjoyed by missions under the Vienna Convention; and

(4) the term "Vienna Convention" means the Vienna Convention on Diplomatic Relations of April 18, 1961 (T.I.A.S. numbered 7502; 23 U.S.T. 3227), entered into force with respect to the United States on December 13, 1972.

42. The Libyan Government entered the Vienna Convention on June 7, 1977.

43. The preamble to the Vienna Convention states

The States Parties to the present Convention,

Recalling that peoples of all nations from ancient times have recognized the status of diplomatic agents,

Having in mind the purposes and principles of the Charter of the United Nations concerning the sovereign equality of States, the maintenance of international peace and security, and the promotion of friendly relations among nations,

Believing that an international convention on diplomatic intercourse, privileges and immunities would contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems,

Realizing that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States,

Affirming that the rules of customary international law should continue to govern questions not expressly regulated by the provisions of the present Convention,

Having agreed as follows: . . .

44. Article 1 (i) of the Vienna Convention defines "premises of the mission" as "the buildings or parts of the buildings and land ancillary thereto, irrespective of ownership, used for the purposes of the mission including the residence of the head of the mission."

45. Article 22 of the Vienna Convention states

> (1) The premises of the mission shall be inviolable. The agents of the receiving State may not enter them, except with the consent of the head of the mission.
>
> (2) The receiving State is under a special duty to take all appropriate steps to protect the premises of the mission against any intrusion or damage and to prevent any disturbance of the peace of the mission or impairment of its dignity.
>
> (3) The premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution.

46. Article 23 (1) of the Vienna Convention states

> The sending State and the head of the mission shall be exempt from all national, regional or municipal dues and taxes in respect of the premises of the mission, whether owned or leased, other than such as represent payment for specific services rendered.

47. Article 25 of the Vienna Convention states "The receiving State shall accord full facilities for the performance of the functions of the mission."

48. Defendant WASA, as a semi-autonomous regional entity, violated the Diplomatic Relations Act and Vienna Convention by failing to protect the Libyan Government's property from squatters and by refusing to turn on water and sewage service until the Libyan Government paid a bill in excess of $27,710.46 that Defendant WASA alleges is due and owing on the Wyoming Avenue property.

49. Specifically, Defendant WASA has failed to render any water or sewage service to the Libyan Government since the resumption of diplomatic relations between the United States and Libyan governments.

50. Rather, Defendant WASA has rendered water and sewage service to squatters illegally occupying

51. As a direct and proximate result of Defendant WASA's violations of the Vienna Convention, the Libyan Government has suffered monetary damages, including, but not

limited to, loss of use of the property and costs incurred due to construction and renovation delays resulting from the lack of water and sewage service at the property.

WHEREFORE, Plaintiff Great Socialist People's Libyan Arab Jamahiriya respectfully requests that this Honorable Court grant the relief requested in this Complaint, specifically enter an Order directing Defendant to release any liens for water and sewage service at 2201 Wyoming Avenue, N.W., Washington, DC and direct resumption of water and sewage service at this address as well as an Order directing Defendant District of Columbia Water and Sewer Authority to pay One Million Dollars as compensatory damages resulting from Defendant's failure to provide water and sewage service at the Wyoming Avenue property.

Respectfully submitted,

/s/___________________________________
J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500 (voice)
(202) 862-9825 (fax)

Attorney for Plaintiff Great Socialist People's Libyan Arab Jamahiriya

limited to, loss of use of the property and costs incurred due to construction and renovation delays resulting from the lack of water and sewage service at the property.

WHEREFORE, Plaintiff Great Socialist People's Libyan Arab Jamahiriya respectfully requests that this Honorable Court grant the relief requested in this Complaint, specifically enter an Order directing Defendant to release any liens for water and sewage service at 2201 Wyoming Avenue, N.W., Washington, DC and direct resumption of water and sewage service at this address as well as an Order directing Defendant District of Columbia Water and Sewer Authority to pay One Million Dollars as compensatory damages resulting from Defendant's failure to provide water and sewage service at the Wyoming Avenue property.

Respectfully submitted,

/s/ J.P. Szymkowicz

J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500 (voice)
(202) 862-9825 (fax)

Attorney for Plaintiff Great Socialist People's Libyan Arab Jamahiriya



810 First Street, NE, Suite 1161
Washington DC 20002
Office: (202) 354-3616
Fax: (202) 354-3681

**District of Columbia**
**Water & Sewer Authority**
*Collections Office*

# Fax

| | | | |
|---|---|---|---|
| **To:** | ANWAR | **From:** | Regina Deramous |
| **Fax:** | 202-944-9606 | **Pages:** | 3 pages including cover sheet |
| **Phone:** | 202-944-9601 ext 208 | **Date:** | 2/8/2006 |
| **Re:** | | **CC:** | |

☐ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

● **Comments**

ROSIE TAYLOR

202
354-3667

Please submit your payments to:

DC Water and Sewer Authority (DC WASA)

Attention: Regina Deramous

810 First Street, NE, Suite 1100

Washington, DC 20002

Thank you for the opportunity to be of assistance.



DCWASA PRODUCTION FILES E-CIS V7R3

Ledger Information Report

count # 75294-9 UNITED KINGDOM OF LYBIA

Service Address 2201 Wyoming Ave NW

| Bill Date | Type | Amount | Balance |
|---|---|---|---|
| 9/26/2005 | LCG | 271.70 | 27,710.46 |
| 8/25/2005 | LCG | 269.03 | 27,438.76 |
| 7/26/2005 | LCG | 266.40 | 27,169.73 |
| 6/23/2005 | LCG | 263.78 | 26,903.33 |
| 5/24/2005 | LCG | 261.20 | 26,639.55 |
| 4/21/2005 | LCG | 258.64 | 26,378.35 |
| 3/22/2005 | LCG | 256.10 | 26,119.71 |
| 2/16/2005 | LCG | 253.59 | 25,863.61 |
| 1/17/2005 | LCG | 251.10 | 25,610.02 |
| 12/16/2004 | LCG | 248.59 | 25,358.92 |
| 11/16/2004 | LCG | 245.63 | 25,110.33 |
| 11/02/2004 | LCG | 5.30 | 24,864.70 |
| 10/13/2004 | LCG | 243.11 | 24,859.40 |
| 9/28/2004 | CHG | 53.01 | 24,616.29 |
| 9/07/2004 | LCG | 240.79 | 24,563.28 |
| 9/01/2004 | CHG | 11.76 | 24,322.49 |
| 8/06/2004 | LCG | 231.84 | 24,310.73 |
| 7/07/2004 | LCG | 177.77 | 24,078.89 |
| 7/07/2004 | LCG | 540.71 | 23,901.12 |
| 6/07/2004 | LCG | 176.05 | 23,360.41 |
| 6/02/2004 | CHG | 5,407.09 | 23,184.36 |
| 5/07/2004 | LCG | 172.61 | 17,777.27 |
| 4/07/2004 | LCG | 172.61 | 17,604.66 |
| 3/08/2004 | LCG | 170.94 | 17,432.05 |
| 2/06/2004 | LCG | 167.60 | 17,261.11 |
| 1/07/2004 | LCG | 167.60 | 17,093.51 |
| 12/08/2003 | LCG | 165.96 | 16,925.91 |
| 11/06/2003 | LCG | 164.33 | 16,759.95 |
| 10/06/2003 | LCG | 162.72 | 16,595.62 |
| 9/06/2003 | LCG | 161.04 | 16,432.90 |
| 7/31/2003 | LCG | 141.43 | 16,271.86 |
| 7/22/2003 | LCG | 26.86 | 16,130.43 |
| 6/30/2003 | LCG | 140.08 | 16,103.57 |
| 6/17/2003 | CHG | 268.62 | 15,963.49 |
| 6/03/2003 | CHG | 1,551.93 | 15,694.87 |
| 5/30/2003 | LCG | 135.38 | 14,142.94 |
| 4/30/2003 | LCG | 110.35 | 14,007.56 |
| 4/03/2003 | LCG | 250.34 | 13,897.21 |
| 3/31/2003 | LCG | 108.52 | 13,646.87 |
| 3/03/2003 | CHG | 2,503.35 | 13,538.35 |
| 2/28/2003 | LCG | 105.65 | 11,035.00 |
| 1/31/2003 | LCG | 76.88 | 10,929.35 |

PAY = Pay...

- غرامات تأخير الدفع ⇐ LCG
- قيمة فاتورة الماء ⇐ CHG (قراءة العداد)
- الدفع = PAY

02/08/2006 12:59 2023543711 AMR FAX PAGE 03/04

20030106 10:0AM
WREG 01

Page 2
LED/CIS1300

DCWASA PRODUCTION FILES E-CIS V7R3

Ledger Information Report

Account # 75294-9 UNITED KINGDOM OF LYBIA

| | Bill Date | Type | Amount | Balance |
|---|---|---|---|---|
| | 1/06/2003 | LCG | 287.65 | 10,852.47 |
| قراءة العداد | 12/04/2002 | CHG | 2,876.54 | 10,564.82 |
| | 10/31/2002 | LCG | 47.59 | 7,688.28 |
| | 10/03/2002 | LCG | 257.73 | 7,640.69 |
| | 9/30/2002 | LCG | 47.13 | 7,382.96 |
| قراءة العداد | 9/02/2002 | CHG | 2,577.33 | 7,335.83 |
| غرامات | 8/30/2002 | LCG | 45.34 | 4,758.50 |
| | 7/03/2002 | LCG | 178.77 | 4,713.16 |
| | 6/28/2002 | LCG | 26.97 | 4,534.39 |
| قراءة العداد | 6/02/2002 | CHG | 1,787.65 | 4,507.42 |
| | 5/10/2002 | PAY | 551.00CR | 2,719.77 |
| مخالفات | 4/30/2002 | LCG | 22.67 | 3,270.77 |
| | 4/12/2002 | LCG | 6.40 | 3,248.10 |
| | 4/12/2002 | LCG | 88.01 | 3,241.70 |
| | 3/29/2002 | LCG | 6.40 | 3,153.69 |
| قراءة العداد | 3/12/2002 | CHG | 880.07 | 3,147.29 |
| | 2/19/2002 | CHG | 1,627.58 | 2,267.22 |
| | 1/14/2002 | PAY | 551.00CR | 639.64 |
| | 1/14/2002 | PAY | 300.00CR | 1,190.64 |
| | 1/03/2002 | LCG | 70.17 | 1,490.64 |
| | 12/04/2001 | PAY | 97.00CR | 1,420.47 |
| | 12/04/2001 | PAY | 47.00CR | 1,517.47 |
| قراءة عداد | 12/03/2001 | CHG | 701.66 | 1,564.47 |
| | 11/07/2001 | LBP | 400.00CR | 862.81 |
| | 10/04/2001 | LCG | 31.02 | 1,262.81 |
| قراءة عداد | 9/03/2001 | CHG | 310.14 | 1,231.79 |
| | 8/31/2001 | LCG | 7.17 | 921.65 |
| | 7/30/2001 | LCG | 7.17 | 914.48 |
| | 6/30/2001 | LCG | 7.17 | 907.31 |
| | 6/15/2001 | PAY | 237.00CR | 900.14 |
| | 6/11/2001 | PAY | 140.00CR | 1,137.14 |
| | 5/30/2001 | CHG | 119.09 | 1,277.14 |
| | 5/17/2001 | PAY | 350.00CR | 1,158.05 |
| | 5/15/2001 | PAY | 120.00CR | 1,508.05 |
| | 4/25/2001 | CHG | 8.80 | 1,628.05 |
| | 4/18/2001 | CHG | 54.86 | 1,619.25 |
| | 3/16/2001 | CHG | 548.61 | 1,564.39 |
| | 2/09/2001 | PAY | 338.60CR | 1,015.78 |
| | 2/05/2001 | CHG | 135.44CR | 1,354.38 |
| | 1/17/2001 | CHG | 135.44 | 1,489.82 |
| قراءة عداد | 12/15/2000 | CHG | 1,354.38 | 1,354.38 |
| | 10/16/2000 | PAY | 741.47CR | .00 |
| قراءة العداد | 9/18/2000 | CHG | 741.48 | 741.47 |

DCWASA PRODUCTION FILES E-CIS V7R3

Ledger Information Report

Account # 75294-9 UNITED KINGDOM OF LYBIA

| Current | 31 - 60 | 61 - 90 | Over 90 |
|---|---|---|---|
| .00 | .00 | .00 | .00 |

| Aged Total | Unposted $ | Adjustments | Balance |
|---|---|---|---|
| .00 | .00 | .00 | 27,710.16 |

LCG = Late Payment Charge
LBP = Lockbox Payment
CHG = Water Charges
PAY = Payment(s)

- غرامات تأخير الدفع ⇐ LCG
- فيه فاتورة الماء ⇐ CHG (قراءة العداد)
- الدفع — PAY